**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

ANDRE GRANT,

Plaintiff,

v.

RENTGROW, INC., and TRANSUNION RENTAL SCREENING SOLUTIONS, INC.,

Defendants.

Civil Action No. 5:21-cv-1172

**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

**JURY TRIAL DEMANDED**

Plaintiff Andre Grant ("Plaintiff" or "Mr. Grant") brings this action on an individual basis, seeking statutory and other damages against defendant RentGrow, Inc. ("RentGrow"), and TransUnion Rental Screening Solutions, Inc. ("TURSS") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

2. RentGrow and TURSS (collectively, "Defendants") have reported inaccurate information concerning Plaintiff's credit and background history, namely, that Plaintiff had been previously evicted from a rental property.

3. Although Plaintiff submitted disputes to both RentGrow and TURSS demanding the correction of the reporting, RentGrow and TURSS failed to properly complete an investigation and/or correct the disputed information and continued to report the disputed information in a misleading manner to third parties.

4. As discussed below, Defendants' actions have harmed and continues to harm Plaintiff.

## PARTIES

5. Plaintiff is a natural person that resides in Braunfels, Texas, County of Comal, and qualifies as a "consumer" as defined and protected by the FCRA.

6. Defendant RentGrow is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). RentGrow assembles and merges information contained in the database of another consumer reporting agency and maintains a database of the assembled or merged information from which new consumer reports are produced. RentGrow is registered to do business in the State of Florida, maintains its principal place of business at 307 Waverly Oaks Road, Suite 301, Waltham, MA 02452, regularly conducts business in this judicial district, and can be served with process by way of its registered agent, Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701.

7. Defendant TURSS is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). TURSS is registered to do business in the State of Florida, regularly conducts business in this judicial district, maintains its principal place of business located at 555 W. Adams, Chicago, IL 60661, and can be served with process by way of its registered agent Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9. Venue is proper in this District under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred in this district.

## STATEMENT OF FACTS

### A. The FCRA

10. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer credit reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

11. To that end, the FCRA imposes the following twin duties on consumer reporting agencies (commonly referred to as "credit bureaus"): (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies or suppress the inaccurate or misleading information.

12. The FCRA provides consumers with a private right of action against consumer reporting agencies that fail to comply with their statutory obligations.

### B. Substantive Factual Allegations

13. In early 2017, Plaintiff was renting a house in Harris County, Texas.

14. On or around February 5, 2017, Plaintiff paid all the remaining amounts due under the rental agreement and voluntarily surrendered possession of the house to his landlord at the time.

15. In or around May of 2019, Plaintiff submitted an application to a leasing agency, non-party LeasingDesk, in order to rent an apartment.

16. After Plaintiff submitted his application and consented to a background check, LeasingDesk advised that his application was denied, as his background check revealed that he had been evicted from the house he had previously rented in Harris County.

17. Plaintiff was surprised, as he had never received any notice of any eviction, had paid all amounts due and owing under the rental agreement, and had voluntarily surrendered the property back to the landlord.

18. Plaintiff immediately called the landlord, who confirmed he had never filed for eviction against Plaintiff.

19. Plaintiff checked the public records of Harris County and found that, although there was indication that an eviction had been filed, the eviction proceedings were dismissed with a final judgement entered in favor of the tenant (*i.e.*, in favor of Mr. Grant).

20. Plaintiff then submitted a dispute to LeasingDesk, who thereafter corrected the information on his background check, which qualified Plaintiff to rent the apartment for which he had applied.

21. Plaintiff moved into the apartment, under the impression that his dispute had fully resolved the issue surrounding the reporting of the eviction record.

22. Plaintiff lived in the apartment throughout the term of the lease, which expired November 4, 2021.

23. Towards the end of his leasing period, Plaintiff learned he would be unable to stay in the apartment for another lease term, and he gave notice that he would be leaving the apartment.

24. After searching for an apartment that fit Plaintiff's needs and budget, Plaintiff found an ideal apartment located in the Berkshire Creekside apartment complex, and, in or around

October of 2021, Plaintiff submitted a rental application for the apartment to the Berkshire Creekside management agency (the "Berkshire Creekside Management").

25. As part of the application process, Plaintiff consented to a background check, which Berkshire Creekside Management said would be conducted through services provided by defendant RentGrow.

26. Plaintiff was told he was tentatively accepted as a tenant, subject to the background check results, and was given a move-in date of November 2, 2021.

27. On November 1, 2021, Berkshire Creekside Management requested that RentGrow provide a background consumer report concerning Plaintiff.

28. On that same day, Plaintiff received a letter from Berkshire Creekside Management advising that his application had been denied on the basis of the background consumer report that RentGrow provided to Berkshire Creekside Management, which reported that Plaintiff had been subject to an eviction, and that such records did not meet Berkshire Creekside's requirements.

29. On the same day that Plaintiff received the denial letter, Plaintiff submitted a written dispute via RentGrow's website disputing the accuracy of RentGrow's reporting of the eviction record, as Plaintiff had never been evicted.

30. After submitting the dispute, Plaintiff called RentGrow directly to confirm that the dispute was processed.

31. When Plaintiff's call was answered by a RentGrow representative, Plaintiff advised that he had disputed RentGrow's reporting on the background consumer report it had sent to Berkshire Creekside Management concerning Plaintiff, as Plaintiff had never been evicted.

32. In response, the RentGrow representative stated that public records showed that Plaintiff had an eviction on his record.

33. Plaintiff asked the RentGrow representative whether he had the public record information in front of him, which the representative confirmed that he did.

34. Plaintiff then asked the RentGrow representative if he saw that the public records reflected that the eviction proceedings were dismissed with a final judgment entered in favor of the tenant.

35. In response to Plaintiff's question, the RentGrow representative was silent for a considerable amount of time. Eventually, the RentGrow representative stated that he could not see that the eviction proceedings were dismissed with a final judgment entered in favor of the tenant based on the records he had in front of him.

36. Plaintiff was incensed and demanded that the RentGrow representative explain how RentGrow can report a public record without having access to the full record.

37. The RentGrow representative stated that they only had access to part of the record, and that their reporting was based on information reported by another consumer reporting agency, TURSS.

38. The RentGrow representative then further stated that it received the disputed information it reported from TURSS, and that TURSS regularly sends consumer credit information to RentGrow, which RentGrow then automatically aggregates and stores in its database for future reporting purposes.

39. The RentGrow representative confirmed to Plaintiff that the information it receives from TURSS is not confirmed or verified by RentGrow until a consumer submits a dispute as to the accuracy of the information.

40. Plaintiff was shocked to hear the RentGrow representative's statements concerning the process by which RentGrow collects and stores the consumer credit information it receives from TURSS without ever verifying such information.

41. Plaintiff requested that the call be escalated to a supervisor.

42. Plaintiff was connected to a supervisor named Joe, who (i) confirmed RentGrow's receipt of Plaintiff's dispute, (ii) confirmed that RentGrow aggregates consumer credit information without verifying the information until it is disputed, and (iii) said they would submit Plaintiff's dispute to TURSS.

43. Plaintiff, who was growing further distressed by RentGrow's handling of his credit information and the manner in which it was treating the disputed information and his dispute, decided that he could not depend on RentGrow to properly address his dispute and that he would dispute the reporting directly with TURSS as well.

44. Plaintiff immediately submitted a dispute to TURSS disputing the accuracy of the information it had reported concerning the eviction record.

45. On November 3, 2021, Plaintiff received an email from TURSS which contained a link to download a document produced by TURSS (the "TURSS Dispute Result Update") that stated the following:

> We investigated the information you disputed and the disputed information was updated for case number(s): 175200078271.
> Summary of Updates:
>
> - Case number 175200078271 was updated to show as a Civil New Filing filed on 02/14/2017 resulting on [sic] a Civil Dismissal on 03/07/2017 on your consumer report.
>
> The attached consumer report shows how the information appears on your consumer report following our investigation, based on your revised file.

46. Attached to the TURSS Dispute Result Update was a background consumer report (the "TURSS Dispute Result Report").

47. The third page of the TURSS Dispute Result Report contained a section titled "Eviction," which reported that an eviction record was found in the State of Texas under Plaintiff's name.

48. The third page of the TURSS Dispute Result Report failed to report a disposition of the alleged eviction record.

49. The fourth page of the TURSS Dispute Result Report also reported that an eviction record was found in the State of Texas under Plaintiff's name, reported that "No SSN Returned" and "Date of Birth – Not Available" concerning the eviction record.

50. The fourth page of the TURSS Dispute Result Report **also** failed to report a disposition of the alleged eviction record.

51. The fifth page of the TURSS Dispute Result Report had a section titled "Eviction Related Proceedings," with a column stating "Requested By: Victor Lepe" (who, upon information and belief, is an employee or agent of TURSS) and "Date/Time Requested: 11/3/2021 8:45:39 AM."

52. Below this, the fifth page of the TURSS Dispute Result Report (i) stated Plaintiff's name, as well as the address, county, state, and court file number for the alleged eviction record, and (ii) stated "Release Date: 3/7/2017" and "Filing Type: Civil Dismissal."

53. On November 3, 2021, Plaintiff also received an email from RentGrow stating the following:

> Thank you for contacting RentGrow regarding your dispute. When the investigation is completed, we will notify you of the results. What happens next?
>
> We will review your dispute and:

- Submit it to the credit bureau (such as Experian®, Equifax® or TransUnion®) or other agency that provided us with the disputed information;
- In some limited circumstances, perform our own investigation; and/or
- Provide you with additional information or resources.

54. Also on November 3, 2021, Plaintiff received a second email from RentGrow (the "RentGrow Dispute Results Email") stating the following:

> Thank you for contacting RentGrow about your tenant screening report. We received your dispute and submitted it to the agency that provided the disputed information. The investigation is complete and the results are attached. Additionally, we notified the property where you applied that your tenant screening report has been updated. If you have any questions about the investigation, the agency's name and contact information are on the investigation results.

55. Attached to the RentGrow Dispute Results Email was a PDF file titled "Result" that was merely a second copy of the TURSS Dispute Result Update and the TURSS Dispute Result Report.

56. RentGrow did not provide any document that demonstrated the results of any investigation that ***it*** conducted in response to Plaintiff's dispute, as RentGrow did not conduct an investigation in response to Plaintiff's dispute.

57. In fact, RentGrow's communications to Plaintiff (both by way of its representatives and the emails it sent to Plaintiff) demonstrate that RentGrow never even intended to conduct an investigation in response to Plaintiff's dispute, but that it would merely rely on the results of TURSS's investigation.

58. The TURSS Dispute Result Report further evidenced that Defendants had initially reported the eviction record without any indication that the alleged eviction action was recorded as dismissed, as it purported to allegedly update Plaintiff's file to include a record of the dismissal.

59. In addition, the TURSS Dispute Result Report also failed entirely to report that the Harris County public records related to the alleged eviction action reported that a final judgment was entered in favor of Mr. Grant.

60. Defendants continue to report the alleged eviction record in this misleading manner.

61. After receiving the TURSS Dispute Result Update and the TURSS Dispute Result Report, Plaintiff immediately contacted Berkshire Creekside Management to confirm whether his application was processed and accepted on the basis of the updated reporting.

62. However, Berkshire Creekside Management advised Plaintiff that they had already leased out the original apartment for which Plaintiff had applied, and that the remaining apartments (of identical size and amenities to that of the original apartment) were only available for an increased monthly rental payment of approximately $350 more than Plaintiff would have paid had he qualified for the original apartment earlier.

63. Plaintiff was crushed, as he had been depending on the apartment for which he had applied, and now faced being homeless.

64. In addition, members of the Berkshire Creekside Management team had stated to Plaintiff that it was Plaintiff's fault that he had lost out on the apartment, which further embarrassed Plaintiff.

65. Because Plaintiff's then-current lease was expiring on November 4, 2021, Plaintiff immediately scrambled to find an alternative place to live.

66. To date, Plaintiff has been continuously searching for a suitable alternative property to rent but has been unable to find one within his price range.

67. Plaintiff was forced to put his belongings into paid storage, and, as of the filing date of this complaint, Plaintiff is living on a friend's couch.

68. Plaintiff is ashamed that he is currently homeless, and Plaintiff feels that will not likely change in the near future, as, in the event that he applies for a suitable rental property, the eviction record will be reported in the misleading manner in which Defendants had reported and continue to report the eviction record.

69. These circumstances have caused Plaintiff considerable emotional distress, embarrassment, hopelessness and depression.

70. Plaintiff, a fitness enthusiast who typically exercises six times a week, has not been able to exercise once since his rental application was denied and he learned of the inaccurate and misleading reporting.

71. In addition, ever since Plaintiff's rental application was denied and Plaintiff learned of the inaccurate and misleading reporting, Plaintiff has been struggling with disrupted eating and sleeping habits.

72. In Plaintiff's own words, Plaintiff "hasn't been himself as a person" since learning of the denial and inaccurate and misleading reporting.

73. Defendants' violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

74. Alternatively, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

75. In any event, each of the Defendants are individually liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION

### COUNT I

### Against RentGrow and TURSS for Violations of the FCRA, 15 U.S.C. § 1681e(b)

76. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

77. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of credit reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

78. RentGrow and TURSS willfully, intentionally, recklessly, and negligently violated § 1681e(b) because they failed to follow reasonable procedures to ensure maximum possible accuracy of the information attributable to Plaintiff.

79. Specifically, Defendants knew or should have known they were reporting consumer credit background information to a third party that would be relying on such information to make decisions concerning Plaintiff's eligibility as a tenant.

80. Nevertheless, Defendants reported that Plaintiff was subject to an eviction without reporting that the eviction proceedings were dismissed with a final judgment entered in favor of Mr. Grant, as further alleged herein.

81. In fact, RentGrow's representative confirmed to Plaintiff that RentGrow engaged in a process of aggregating and reporting consumer credit background information without verifying that such information was accurate.

82. Further, upon information and belief, TURSS knew or should have known that RentGrow fails to verify the bulk information that TURSS reports to RentGrow before RentGrow

itself reports such information, and yet TURSS still provided the bulk information to RentGrow for reporting purposes.

83. As a result of the misconduct on the part of RentGrow and TURSS, Plaintiff has suffered actual damages in the form of lost housing opportunities, harm to credit reputation and significant emotional distress.

84. As alleged, Plaintiff remains homeless as of the filing date of this complaint.

85. The violations committed by RentGrow and TURSS were a direct and proximate cause of Plaintiff's injuries, as alleged herein. RentGrow and TURSS are therefore liable to Plaintiff for their negligent and willful failures to follow reasonable policies and procedures.

86. As a result of the violations of 15 U.S.C. § 1681e(b) committed by RentGrow and TURSS, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

**COUNT II**

**Against RentGrow and TURSS**
**for Violations of the FCRA, 15 U.S.C. §§ 1681i**

87. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

88. Upon receiving a consumer's dispute, credit bureaus are legally required to conduct a reasonable investigation and correct the disputed information, as follows:

> . . . if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency ***is disputed by the consumer***, and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information***, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

*Id.* §1681i(a)(1).

89. Credit reporting agencies are further required to provide prompt notice of the consumer's dispute to the furnisher of the disputed information, as follows:

> (A) *In general.* ***Before the expiration of the 5-business-day period*** beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), ***the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person***. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

*Id.* §1681i(a)(1) (emphasis added).

90. Credit reporting agencies are further required to maintain reasonable procedures to prevent the reappearance of inaccurate information, as follows:

> A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph….

*Id.* §1681i(a)(5)(C).

91. Defendants violated § 1681(i), as Plaintiff disputed the accuracy of Defendants' reporting information, and still, RentGrow and TURSS willfully, intentionally, recklessly, and/or negligently failed to perform a reasonable investigation and remove the inaccurate information.

92. Specifically, Plaintiff disputed the accuracy of Defendants' reporting of the alleged eviction record.

93. Defendants knew or should have known they were reporting consumer credit background information to a third party that would be relying on such information to make decisions concerning Plaintiff's eligibility as a tenant.

94. Nevertheless, (i) as a result of its purported investigation, TURSS continued to report the eviction record in a misleading manner that failed to report that the eviction proceedings were dismissed with a final judgement entered in favor of Mr. Grant; and (ii) while it had its own,

independent duty to conduct a reasonable investigation into Plaintiff's dispute, RentGrow failed to conduct ***any*** investigation in response to Plaintiff's dispute and relied entirely on the results of TURSS's purported investigation.

95. RentGrow and TURSS also violated 1681(i) on one or more occasions, as they willfully, intentionally, recklessly, and negligently failed to maintain reasonable procedures to prevent the reappearance the misleading information that Plaintiff disputed in Plaintiff's file and in consumer reports concerning Plaintiff.

96. As a result of the misconduct on the part of RentGrow and TURSS, Plaintiff has suffered actual damages in the form of lost housing opportunities, harm to credit reputation and significant emotional distress.

97. As alleged, Plaintiff remains homeless as of the filing date of this complaint.

98. The violations committed by RentGrow and TURSS were a direct and proximate cause of Plaintiff's injuries, as alleged herein. RentGrow and TURSS are therefore liable to Plaintiff for their negligent and willful failures to follow reasonable policies and procedures.

99. As a result of the violations of 15 U.S.C. §§ 1681i committed by RentGrow and TURSS, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages as allowed by 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorney's fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o; and

iii. Awarding such other relief as to this Court may seem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 23, 2021

*/s/ David A. Chami*
David A. Chami AZ No. 027585
**The Consumer Justice Law Firm**
8245 N. 85th Way
Scottsdale, Arizona 85258
Telephone: (480) 626-2359
Email: dchami@cjl.law
*Attorney for Plaintiff Andre Grant*